# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5232 | **DATE** | 3/16/2004 |
| **CASE TITLE** | RAY HANANIA and ALISON RESNICK vs. BETTY LOREN-MALTESE, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to strike is granted in part and denied in part. Defendants' motion for summary judgment is granted in part and denied in part. Plaintiffs' motion for partial summary judgment on defendants' advice-of-counsel defense is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAR 1 7 2004

date docketed

docketing deputy initials

date mailed notice

LG

courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
2004 MAR 16 PM 6: 03

Date/time received in central Clerk's Office?

mailing deputy initials

**Document Number**

235

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAY HANANIA and ALISON RESNICK,      )
                                      )
                    Plaintiffs,       )
                                      )
        vs.                           )      No. 98 C 5232
                                      )
BETTY LOREN-MALTESE, et al.,          )
                                      )
                    Defendants.       )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Alison Resnick and Ray Hanania, former employees of the Town of Cicero

(Cicero), brought this action against Cicero's former president, Betty Loren-Maltese; members

of Cicero's Board of Trustees (Trustees); Cicero's newsletter, the Cicero Town News; and the

Cicero Town Republican Organization and its newsletter, the Cicero Town Observer.

Plaintiffs also filed suit against their former attorneys, Jerome Torshen and Torshen, Spreyer,

Garmisa & Slobig, Ltd., who were previously dismissed from the lawsuit. *See* Hanania v.

Loren-Maltese, 56 F.Supp.2d 1010 (N.D. Ill. 1999) *aff.* 212 F.3d 353 (7th Cir. 2000). Though

several counts of the complaint have been dismissed, numerous counts still remain. In count

I plaintiffs allege that Cicero, Loren-Maltese, and the Trustees retaliated against them for

exercising their rights of free speech, in violation of 42 U.S.C. § 1983. Counts II and III are

conspiracy claims against all defendants. Plaintiffs allege intentional infliction of emotional

distress against Cicero and Loren-Maltese in count V and defamation against all defendants,

except Cicero, in count VIII. Finally, in count IX plaintiffs seek to impose indemnification,

alleging that Cicero must pay any damages for which its employees are liable.

Defendants move for summary judgment on all counts pursuant to Federal Rule of Civil Procedure 56. In addition, plaintiffs file a partial summary judgment motion for defendants' advice-of-counsel defense. Before turning to the parties' arguments on those motions, we must address defendants' motion to strike certain facts from plaintiffs' Rule 56.1 statement of additional facts.

## Motion to Strike

Plaintiffs filed a 176-paragraph statement of additional facts, from which defendants want to strike 79 paragraphs. As several judges in this district have pointed out, motions to strike, while permissible, are often unnecessary because a party can contest a fact's validity in his response to the statement. *See, e.g.*, Fenje v. Feld, 2003 WL 22922162 at *3 (N.D.Ill. 2003)(finding motions to strike unnecessary because a statement will be disregarded to the extent it is not supported); Newsome v. James, 2000 WL 528475 at *3 (N.D.Ill. 2000). However, as the defendants have filed the motion, the court will rule on it. Defendants claim that a large number of these paragraphs are merely argument disguised as facts. They cite paragraph 17 as an example. It states, "In the face of growing pressure, Maltese announced on or about November 8, 1996 that she planned to hire William Kunkle to investigate the Specialty Risk overpayments." While plaintiffs' commentary, "In the face of growing pressure," is unsupported by the citations provided, Maltese's employment of Kunkle to investigate the Specialty Risk affair is a supported fact. Plaintiffs should take better care to avoid argument in their statement of facts – it only frustrates a court's identification of the uncontested facts. However, the court will not strike paragraphs from plaintiffs' statement of additional facts for containing argument. Rather, the court will disregard any statements

that are merely unsupported argument, when reaching its decision on the motions for summary judgment.

Defendants also argue that numerous paragraphs are not supported by the record and others are merely speculation and conjecture. The majority of these paragraphs are supported by plaintiffs' citations; however, paragraphs 14, 138, 163, 164, and part of 13 are not. The article from the October 25, 1996, edition of the Chicago Sun-Times does not mention John La Giglio, nor that Loren-Maltese's $300,000 investment was never repaid, as paragraph 13 states. The article also fails to support paragraph 14. The memo and affidavit cited in paragraph 138 do not establish that Cicero attorney Merrick Rayle was conducting an investigation of misconduct by Hanania. In paragraph 163 plaintiffs state that defendants conspired with El Dia; however, neither citation, an El Dia newspaper article and Cicero's response to paragraph 3 of the first set of interrogatories, supports this assertion. Nor is paragraph 164's statement, "Maltese and the Board are the municipal policymakers for with [sic] final policymaking authority for the Town of Cicero," confirmed by its citations.

Defendants contend that plaintiffs fail to lay a proper foundation for their opinion testimony in paragraphs 126, 147, 148, and 151. Resnick's deposition testimony provides proper support for paragraph 126's list of physical ailments that she experienced after defendants' alleged retaliation. Given plaintiffs' experience working for the Town of Cicero, and their exposure to Loren-Maltese, their opinions regarding her influence and operations support paragraphs 147, 148, and 151.

In their final argument to strike, defendants assert that paragraphs 33, 138, 157 and 158 are based on inadmissible evidence. This argument is moot because the court struck

paragraph 138 for lack of support in the record and it does not rely on paragraphs 33, 157 or 158 to reach its decision on the motions for summary judgment.

Defendants' motion to strike paragraphs 14, 138, 163, 164, and references in paragraph 13 that are not specifically contained in the October 25, 1996, Chicago Sun-Times article, is granted, but their motion to strike all other paragraphs is denied.

## BACKGROUND

Once again we summarize the history of this case as told through the hundreds of pages of pleadings, memorandums, statements of fact and depositions. Defendant Betty Loren-Maltese was Cicero's town president from January 1993 until August 2002, when she forfeited her office following a conviction for her involvement in an insurance fraud scheme. Both Alison Resnick and her husband, Ray Hanania, worked for the Town of Cicero during Loren-Maltese's tenure. Hanania was a political and media consultant for Cicero from 1993 until the fall of 1996, while Resnick was Cicero's town collector from February 1996 until December 1997.

In October 1996, reporters contacted Hanania regarding subpoenas that were issued to Cicero. Hanania called Loren-Maltese to discuss the issue, and they agreed to meet. Though the parties disagree over the content of their conversation, they both admit that by the end of the conversation Loren-Maltese had fired Hanania.

On October 25, 1996, the Chicago Sun-Times reported that the Federal Bureau of Investigations was looking into alleged wrongdoing by Loren-Maltese in connection with Specialty Risk, an insurance carrier for Cicero. At a Cicero Board meeting four days later, Resnick asked Loren-Maltese to explain her involvement with the insurance company; Loren-Maltese declined to do so. Resnick asserts that she and another trustee introduced a resolution

before the Board to request an investigation into the matter by the state's attorney.  Loren-Maltese, who allegedly opposed the resolution, decided to hire a private investigator to look into the Specialty Risk affair.  Resnick, along with others in the Cicero government, publicly criticized this decision.

Resnick, who was appointed town collector in February 1996, to fill a vacancy, planned to run for the office on Loren-Maltese's ticket in the February 1997 Republican primary.  However, shortly after Resnick spoke out about Specialty Risk, Loren-Maltese allegedly dropped her from the Republican slate.  Resnick, and two other candidates who spoke out against Loren-Maltese, formed an opposition slate: the Restore Honesty in Cicero party.  After a contentious campaign during which Resnick and Hanania criticized Loren-Maltese's policies and accused her of corruption, Resnick lost the Republican primary.  Despite her loss, Resnick's term as town collector continued until December 1997.

Beginning in December 1996, the Board of Trustees voted to change the responsibilities of the town collector's office.  They eliminated the town collector's authority over business licenses and pet licenses, and transferred employees in the office to other departments.  In May 1997, the town collector's office was moved to a smaller area and Resnick was allegedly denied access to her old office files and equipment.  Soon thereafter, Cicero's director of human resources, Jim Terracino, terminated Resnick's two remaining employees.

In response to these actions Resnick filed a complaint against Loren-Maltese, Terracino, and the Town of Cicero, seeking to enjoin them from interfering with her authority as town collector for the remainder of her term.  On June 4, 1997, Judge Lester Foreman, of the Circuit Court of Cook County, granted Resnick a temporary restraining order, restraining Loren-Maltese from "taking any action which would prevent or impede the Town Collector for the

Town of Cicero from performing the duly designated duties and activities of that office," and reinstating Resnick's recently-fired employees. Following a preliminary injunction hearing, Judge Foreman extended the restraining order and set an expedited schedule for discovery. On June 10, 1997, the Board passed several ordinances directing that certain payments be delivered to the town treasurer rather than the town collector. The Board also passed an ordinance eliminating the staff positions of Resnick's recently- reinstated employees. Resnick's amended state court complaint alleged that these ordinances altered the form of government for Cicero, in violation of the Illinois state constitution.

After a series of continuances and extensions, the parties agreed to a settlement. The settlement stated that Resnick would dismiss her suit and finish her term as town collector, without interference. The agreement also provided that Cicero would employ Torshen, Spreyer, Garmisa & Slobig to handle a lawsuit, for which it would be paid $225 an hour. Plaintiffs assert that this agreement was substantially different from an earlier draft and that Resnick signed it, relying on the advice of her attorneys. Regardless, on August 20, 1997, the parties signed the settlement agreement and the suit was dismissed the next day. Though the agreement stated that Resnick would continue to perform her regular duties as town collector, including attending Board meetings, she alleges that Loren-Maltese, through her attorney, suggested that Resnick stay away from the meetings, and Resnick agreed.

In her affidavit, Resnick maintains that defendants' retaliation against her continued after the settlement agreement was signed. First, the Board of Trustees refused to accept her monthly office statements. Then, on December 9, 1997, the Board declared a vacancy in the town collector position due to Resnick's unexcused absences from Board meetings. They immediately filled the position with the appointment of the town collector-elect. Resnick once

again contacted her attorney, who was also representing Cicero in a different matter. In response to Resnick's premature dismissal from office, Torshen negotiated for her to receive two weeks salary, which Resnick accepted. The parties dispute whether this payment was made in settlement of any claims.

Resnick maintains that defendants' retaliation did not end after she was terminated. In the 1990s the United States Justice Department sued the Town of Cicero for violation of the Fair Housing Act. The Justice Department alleged that Cicero enacted a zoning ordinance regulating how much square footage a dwelling needed to have for each resident, with the intent to discriminate on the basis of familial status and national origin. While the case was pending, Cicero's attorney, Mark Sterk, received three affidavits from an unknown sender. The affidavits, sworn by three residents of Cicero, stated that Resnick had come to the residents' homes and told them not to sell to Hispanics. Though suspicious of the origin of the affidavits, Sterk turned them over to the Justice Department, in accordance with the rules of discovery. On June 16, 1997, Judge Zagel denied Cicero's motion for summary judgment in the case. Among the reasons he cited for his decision, Judge Zagel discussed Resnick's alleged advice not to sell to Hispanics. On December 9, 1997, Cicero issued a press release announcing the resolution of the case by consent decree. The press release also stated that Judge Zagel would have thrown out the case if it had not been for Resnick's comments, that Cicero would hold her personally responsible for the Justice Department's suit and would be suing her for the town's legal fees, and that the taxpayers paid over $300,000 for her bigotry and ignorance. Both the Cicero Town News and the Cicero Observer printed the same statements in 1997 and 1998. On July 2, 1998, Cicero sent every resident a mailer which repeated the claim that "Judge Zagel indicated that he would have thrown this case out had it not been for testimony regarding

comments made by former Town Collector Alison Resnick to a homeowner planning to sell to a Hispanic family."

From these facts, the following time-line emerges for some of the events giving rise to Resnick's claims. On October 29, 1996, Resnick asked Maltese to explain her involvement in the Specialty Risk scandal. In December 1996, and January 1997, the Board of Trustees passed ordinances altering the powers of the town collector's office. On June 4, 1997, the Circuit Court of Cook County granted Resnick a temporary restraining order against Cicero and Loren-Maltese. On August 20, 1997, Resnick, Loren-Maltese, and Cicero signed a settlement agreement dismissing Resnick's state lawsuit involving claims of interference with Resnick's responsibilities as town collector. After the settlement, on December 9, 1997, the Board declared the town collector's office vacant and replaced Resnick with the town collector-elect. That same day the town issued a press release announcing the consent decree. Thereafter, statements from press releases regarding Resnick were reprinted in the Cicero Town News and Cicero Observer, and on July 2, 1998, the mailer was sent to Cicero residents. Hanania's claims stem from the events of one day, October 29, 1996, when he spoke to Loren-Maltese about Specialty Risk and was then fired.

As a result of these actions, plaintiffs state that they have suffered economic and other damages from lost pay and vacation time, extreme mental anguish, humiliation, embarrassment, physical effects of stress, and damage to reputation.

## DISCUSSION

Our function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists, and that the moving

party is entitled to judgment as a matter of law, will we grant the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Bennett v. Roberts</u>, 295 F.3d 687, 694 (7th Cir. 2002). Defendants argue that they are entitled to summary judgment on all claims. Some of their arguments apply to several claims, while others attack individual counts; some arguments apply to all defendants, while others apply only to certain defendants. We will address the merits of each argument in turn.

<u>Legislative Immunity</u>

Though we did not dismiss plaintiffs' federal claims against Betty Loren-Maltese and the Trustees, on the basis of absolute legislative immunity, in our ruling on defendants' 1999 motion to dismiss, we did note that we would need to revisit the issue at a later date. *See* <u>Hanania</u>, 56 F.Supp.2d at 1014. Now, four years later, we re-examine this defense. Loren-Maltese and the Trustees argue that they have absolute legislative immunity from any liability for damages arising from the alleged harassment of Resnick and her termination as town collector.

Local legislators, along with federal, state and regional legislators, are absolutely immune from suit under 42 U.S.C. § 1983, for their legislative activities. <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity." *Id.* at 54 (*citing* <u>Tenney v. Brandhove</u>, 341 U.S. 367, 376 (1951)). However, a legislator's administrative or executive acts are not protected by absolute immunity. <u>Tenney</u>, 341 U.S. at 379. To determine whether an official's act is legislative, the court must look to the nature of the act, not the motive or intent behind it. <u>Bogan</u>, 523 U.S. at 54. Defendants argue that their actions were legislative and therefore protected. While plaintiffs concede that the Trustees have absolute immunity for their votes

to alter the powers of the town collector, they contest that the defendants have legislative immunity for their decision to remove Resnick from office. They also contest that Cicero or Loren-Maltese enjoys legislative immunity for any of these actions.

An employment decision is generally viewed as administrative, not legislative. Rateree v. Rockett, 852 F.2d 946, 950 (7th Cir. 1988). Some terminations are not administrative because they result from broader legislative decisions. In Rateree, the Seventh Circuit found that the city commissioners' termination of the plaintiff employees was protected by legislative immunity because it resulted from legislative action – the passage of a budgetary ordinance. Id. at 948, 950. The Rateree defendants made "public policy choices that necessarily impact[ed] on the employment policies of the governing body." Id. at 950. Distinguishing an administrative employment decision from a legislative action, the Seventh Circuit noted that plaintiffs' positions were eliminated and no one was hired to replace them. Id.

While the parties dispute whether Resnick's termination qualifies as an administrative or legislative action, they overlook a significant distinction between her case and the cases cited. Resnick held an elected office. She was the town collector, a position that also made her a town trustee. While Resnick was appointed to office, not elected, she was nonetheless in an elected position from which she could not be fired by a supervisor. Section 38 of the Cicero Town Charter states that all officers of the town shall remain in office until new officers have been elected and qualified. Despite this provision, the Board removed Resnick from office by relying on an Illinois state statute. Section 1/80-10(c) of Chapter 60 of the Illinois Compiled Statutes allows a Township Board of Trustees to declare a vacancy in the office of a supervisor or trustee if she has five or more consecutive unexcused absences from regularly-scheduled board meetings. The Cicero Town Charter states that in the event of a vacancy, the Board can fill the

position by appointment for the remainder of the term. Cicero Town Charter § 3. On December 9, 1997, the Board of Trustees declared the office of town collector vacant on the basis of Resnick's absences and appointed the town collector-elect to fill the position.

The Board relied on these provisions and passed two ordinances in order to perform an action it did not otherwise have the power to perform – the termination of Resnick as town collector. The defendants argue that the form of Resnick's removal renders it a legislative action, but its scope and effect make it more akin to a narrow employment decision than a public policy action that impacted on employment. Unlike in Rateree, the Trustees preserved the position of town collector and filled it immediately after removing Resnick. Their actions had no impact other than to remove and replace her. Thus, their termination of Resnick is not entitled to legislative immunity.

Defendants also assert that Loren-Maltese has legislative immunity for her role in the ordinances that reduced the powers of the town collector's office. Resnick contends that Loren-Maltese did not perform any legislative function related to the passage of these ordinances and therefore is not immune. Despite the fact that she did not vote on the ordinances, Loren-Maltese did have a legislative role to play. The Cicero Code states, "The town president shall be president of the Board of Trustees and shall preside at all meetings of the Board, but he shall not vote, except in case of a tie, when he shall cast the deciding vote." Cicero Code § 2-132. Loren-Maltese's presence during the votes for these ordinances was in fulfillment of her legislative duty, clearly mandated by the town code. Thus, she was a part of the legislative process and enjoys immunity for her role in the passage of the ordinances.

As plaintiff highlights, Cicero does not have the legislative immunity of its employees. See Owen v. City of Independence, 445 U.S. 622, 638 (1980)("[O]ur decision holding that

municipalities have no immunity from damages liability flowing from their constitutional violations harmonizes well with developments in the common law and our own pronouncements on official immunities under § 1983."); Reed v. Village of Shorewood, 704 F.2d 943, 953 (7th Cir. 1983)("And the municipality's liability for such acts extends to acts for which the policy-making officials themselves might enjoy absolute immunity because the acts were legislative or judicial in character."); Weissmann v. Carroll, 2003 WL 685870 at *5 (N.D.Ill. 2003). Thus, even if the Trustees and Loren-Maltese could have successfully employed absolute immunity regarding all claims under counts I and II, it would not have applied to Cicero. Legislative immunity extends only to Loren-Maltese and the Trustees for their ordinances limiting the powers of the town collector.

## Collateral Estoppel and Res Judicata

Next, defendants contend that Resnick restates issues in this case that were raised in her 1997 state court suit, which was resolved through a settlement agreement and dismissed with prejudice. Thus, they argue, collateral estoppel bars these issues. In its opinion on defendant's motion to dismiss, the court noted doubts about whether issues addressed in the chancery action could be revisited in this case. See Hanania, 56 F.Supp. at 1015. Plaintiffs maintain that these doubts are misplaced because equity demands that Resnick be allowed to relitigate these matters. The preclusive effect of a state court ruling in a federal court is a matter of state law. Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002). In Illinois, collateral estoppel requires that "(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." Kalush v. Deluxe Corp., 171 F.3d 489, 493 (7th Cir. 1999). As Resnick highlights,

collateral estoppel could only apply to issues arising from defendants' pre-settlement actions. While she does not contest that the requirements of collateral estoppel are satisfied, she argues that this equitable doctrine should not apply in her case.

In <u>Nowak v. St. Rita High School</u>, 197 Ill.2d 381, 390-91, 757 N.E. 2d 471, 478 (Ill. 2001), the Illinois Supreme Court stated, "Even where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." To determine whether application of collateral estoppel would be fair, a court looks to whether the party had a full and fair opportunity to litigate the issues in the prior case. <u>Gray v. Lacke</u>, 885 F.2d 399, 406 (7th Cir. 1989).

Resnick denies that she had a full and fair opportunity to litigate these issues in her previous action. She claims that the interaction between Jerome Torshen, her attorney, and the defendants prohibits the court from finding as a matter of law that she would suffer no unfairness if the court applied collateral estoppel. As the defendants point out, Resnick's argument is undermined by the fact that the settlement agreement, which she signed, clearly stated that Torshen would receive a referral from Cicero. Furthermore, even after the agreement was signed promising Torshen his referral, Resnick sought out his assistance on three other matters involving Cicero. Resnick accepted the settlement agreement, thereby approving the admittedly unusual arrangement between her attorney and Cicero. Her consent to the referral defeats her argument that it would be inequitable to grant summary judgment on her claims stemming from pre-settlement actions.

Resnick asserts that her approval of the settlement terms does not evidence a full and fair opportunity to litigate because Torshen began working on Cicero's referral even before she

signed the agreement. As proof, she cites Loren-Maltese's statement that she met with Torshen before agreeing to the settlement; the Board of Trustees' approval of the referral to Torshen a week before Resnick signed the agreement; and an August 8, 1997 entry on Torshen's billing statement to Cicero. But all of these activities are consistent with the drafting of a settlement agreement that includes a provision that Cicero will provide Torshen with a referral of work. Before the agreement could be written it is understandable that Torshen and Loren Maltese would discuss the referral, the Board would approve it, and Torshen might research the case that he would receive in lieu of defendants' payment of his attorney's fees. Ultimately, Resnick knowingly consented to Torshen receiving the referral as part of her settlement, and so this arrangement cannot now invalidate the terms of that agreement. Evidence that Torshen may have agreed to represent Resnick for costs, or that he later made considerable money from Cicero referrals, or that he believed he had not made enough money on the original referral – as revealed in the smoking gun letter – does not show Resnick was misled regarding the terms of the settlement agreement. She agreed to dismiss her state court case in exchange for a completion of her term as town collector without interference from the defendants. Thus, collateral estoppel bars all of Resnick's claims which arise out of the defendants' pre-settlement activities.

A similar analysis under *res judicata* also justifies summary judgment on plaintiff's pre-settlement claims. As with collateral estoppel, the court must apply Illinois law on *res judicata* to determine its preclusive affect. Hagee v. City of Evanston, 729 F.2d 510, 512 (7th Cir. 1984). Unlike collateral estoppel, which applies only to issues that were litigated, *res judicata* applies to both claims brought and those that could have been brought. *Id.* at 514.

Plaintiffs contend that defendants should not be allowed to argue *res judicata* for it is an

affirmative defense they failed to plead in their answer. Defendants counter that the court has discretion under Federal Rule of Civil Procedure Rule 15(a) to allow defendants to amend their answer to include this defense "when justice so requires." The Seventh Circuit has stated that "[a]s a rule, we have allowed defendants to amend when the plaintiff had adequate notice that a statute of limitations defense was available, and had an adequate opportunity to respond to it despite the defendant's tardy assertion." Jackson v. Rockford Housing Authority, 213 F.3d 389, 394 (7th Cir. 2000). Defendants argue that their *res judicata* defense neither surprises nor prejudices plaintiffs because its factual roots are the same as collateral estoppel, which they did plead. We agree that defendants' can raise the defense.

In Illinois, courts employ different approaches to determine whether two different suits constitute the same cause of action, and are thus barred by *res judicata*: the proof approach and the transactional approach. *See* Welch v. Johnson, 907 F.2d 714, 720 (7th Cir. 1990); Hagee v. City of Evanston, 729 F.2d 510, 513 (7th Cir. 1984). *Res judicata* applies under the proof approach if the same evidence would sustain both suits. Welch, 907 F.2d at 720. Under the transactional approach, the defense applies if the facts underlying both suits are the same. *Id.* Looking to both approaches, the Seventh Circuit has summarized that courts should make "a comparison of the factual undergirding of the two cases at issue" to determine whether *res judicata* bars the second suit. LaSalle Nat. Bank of Chicago v. County of DuPage, 856 F.2d 925, 933 (7th Cir. 1988).

In Resnick's case, *res judicata* could only apply to claims arising out of defendants' pre-settlement actions, as Resnick could not have brought claims in her state court suit for harassment that had not yet occurred. The factual basis for Resnick's § 1983 and state law claims, as they relate to the ordinances curtailing the powers of the town collector's office, is

essentially the same as that for her state court action. As with collateral estoppel, Illinois courts have declined to apply *res judicata* "when its application would work a manifest injustice." Welch, 907 F.2d at 722. As explained above, though the arrangement between Cicero and Torshen was unorthodox, Resnick was aware of the provision and chose to proceed with the settlement dismissing her case. There is no evidence that she would suffer a manifest injustice by denying her the ability to relitigate claims stemming from the Board's ordinances curtailing her powers as town collector.

## Accord and Satisfaction

Defendants also maintain that the two weeks vacation pay, which Resnick accepted following the settlement, acts as accord and satisfaction for alleged injuries that occurred after the state court case was dismissed. The record does not support summary judgment on any of Resnick's claims on the basis of accord and satisfaction. Accord and satisfaction requires "(1) an honest dispute between the parties . . . (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance by the creditor with the understanding that the tender is accepted as full payment." Pritchett v. Asbestos Claims Mgmt. Corp., 773 N.E.2d 1277, 1284, 332 Ill. App.3d 890, 899 (5th Dist. 2002). Undisputed facts do not establish an explicit understanding between the parties that Resnick's acceptance of two weeks vacation pay settled any claims she might have against the city. Both Resnick and Torshen state that the vacation pay was not contingent on her abdication of claims.

## Count I- § 1983

Count I alleges that Cicero, Loren-Maltese, and the Trustees retaliated against Resnick and Hanania for speaking out on matters of public concern in violation of 42 U.S.C. § 1983.

Loren-Maltese and the Trustees argue that they are entitled to qualified immunity from this claim, as well as count II. Defendants highlight that plaintiffs' § 1983 claims must be addressed separately and they put forth several other arguments for summary judgment on each of their claims: Hanania's speech was not on a matter of public concern, neither plaintiff can establish a causal link between their speech and their termination, valid reasons supported plaintiffs' terminations, the reasons for their terminations were not pretexts and they fail to establish liability against defendants.

Qualified immunity applies to Loren-Maltese and the Trustees unless: "(1) the conduct alleged in the complaint sets forth a constitutional violation and (2) the constitutional standards were clearly established at the time of the alleged violation." Khuans v. School Dist. 110, 123 F.3d 1010, 1013 (7th Cir. 1997)(*citing* Johnson v. Fankell, 520 U.S. 911, 914-15 (1997); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 472 (7th Cir. 1997)). First, we look to Resnick and Hanania's burden to establish a constitutional violation. To prove a First Amendment retaliation claim plaintiffs must establish that "(1) the speech in which the plaintiffs engaged was constitutionally protected under the circumstances, and (2) the defendants retaliated against them because of it." Delgado v. Jones, 282 F.3d 511, 516 (7th Cir. 2002)(*citing* Gustafson v. Jones, 117 F.3d 1015, 1018 (7th Cir. 1997)). A public employee's right to speak out on matters of public concern is constitutionally protected and may only be curbed if the employer's interest in promoting efficiency outweighs the employee's interest in free speech. Myers v. Hasara, 226 F.3d 821, 825-26 (7th Cir. 2000).

While the defendants do not contest, for the purpose of their summary judgment motion, that Resnick's speech was on a matter of public concern, they do contest that Hanania's speech was a matter of public concern, arguing that it was merely part of his job as town spokesperson

to discuss the Specialty Risk affair with Loren-Maltese. Hanania states that on October 28, 1996, he discussed the Specialty Risk situation with Loren-Maltese and urged her to publicly explain it. Hanania's speech was a matter of public concern since it addressed municipal funds, public employees' insurance, and government corruption. However, finding that the speech involved a matter of public concern does not require a finding that it is protected. Thus, even though defendants deliver their argument under the heading "Hanania's speech was not on matters of public concern," their argument is broader. They contend that Hanania's speech is not protected because of the nature of his employment.

Defendants rely on <u>Gonzalez v. City of Chicago</u>, 239 F.3d 939 (7th Cir. 2001), to support their assertion that Hanania's speech was not protected by the First Amendment because it was a required duty of his job. In <u>Gonzalez,</u> a former Chicago police officer sued the city and three of his superiors for terminating him in retaliation for the reports he made as an investigator in the Office of Professional Standards. *Id.* at 940. The Seventh Circuit found that even though police misconduct was a matter of public concern, Gonzalez's reports were simply the result of his employment duties and were therefore not protected. *Id.* at 942 ("Speech which is made in all respects as part of the employee's job duties is generally not protected expression of the public employee."). The court was clear that this holding did not establish a per se rule exempting statements made in the course of official duties from the protection of the First Amendment." *Id.* (*quoting* <u>Koch v. City of Hutchinson,</u> 847 F.2d 1436 (10th Cir. 1988)). The Seventh Circuit emphasized that Gonzalez "was 'clearly acting *entirely* in an employment capacity when he made those reports,'[citation omitted], and that he 'could have been fired had he not produced the reports . . . .'" <u>Delgado,</u> 282 F.3d at 518-19. Its holding was limited to the routine discharge of employment responsibilities "where there is no suggestion of public

motivation." *Id.* at 519.

In <u>Delgado</u>, the defendants argued that the plaintiff police officer's discussion with his superiors about the criminal activity of a friend of the chief of police was not protected because the officer had a duty to report violations of the law. *Id.* The Seventh Circuit found that this argument swept too broadly. *Id.* The court recognized that the plaintiff was required to report the activity as an officer. However, how he chose to communicate that information was within his discretion. *Id.* It is this use of discretion or judgment in communicating a matter of public concern that rendered Delgado's communication protected, where Gonzalez's was not. *See id.*

Reviewing the evidence in a light most favorable to Hanania, we cannot say that he exercised no discretion in speaking to Loren-Maltese about Specialty Risk, nor that there was no suggestion of public motivation in his speech. His speech is distinguishable from Gonzalez's reports, which were a mandated job responsibility. Nor does the fact that Hanania only spoke to Loren-Maltese about the issue before his termination affect his claim. Speech on a matter of public concern does not become less so because it is communicated privately to one's superiors. *See* <u>Delgado</u>, 282 F.3d at 518; <u>Givhan v. Western Line Consol. Sch. Dist.</u>, 439 U.S. 410, 415-16 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."). Though it is true that many instances of Hanania's alleged public speech took place after his termination on October 28, 1997, this lone conversation with Loren-Maltese is enough to allow the claim to proceed.

Defendants deny a causal connection between both Hanania's and Resnick's speech and their terminations. They argue that the mere fact that plaintiffs' terminations followed their alleged speech regarding Specialty Risk is not enough to establish a requisite causal connection.

*See* Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918-19 (7th Cir. 2000)(plaintiffs failed to show causal connection in retaliation claim where their only evidence was that the defendant company did not recall them for work three months after they filed age discrimination charges with the EEOC, though the company did recall others who filed the same charges). In Hanania's case, the strongest evidence of a causal connection is timing. His termination did not come three months after his speech, but, rather, followed immediately. Resnick's termination also followed her request for Loren-Maltese to explain her involvement with Specialty Risk. Plaintiffs do not rely on timing alone to support their argument. Loren-Maltese's alleged warning to Resnick and Hanania that they "better watch out" at the meeting in which she fired Hanania further supports the connection between their speech and their terminations, as does Loren-Maltese's statement that actions taken during the 1997 election campaign would not be forgiven or forgotten.

Defendants argue that Hanania's job performance and Resnick's failure to attend Board meetings motivated their terminations. However, the timing of Hanania's termination, in conjunction with Loren-Maltese's alleged threat provides more than speculation that a disagreement over his job performance was not the actual reason for his termination. Resnick's affidavit, which states that she did not attend Board meetings at the request of Cicero's attorney, calls into question the defendants' legitimate reason for her removal as well.

Next, defendants maintain that even if there is a causal link between plaintiffs' speech and their terminations, defendants did not violate plaintiffs' constitutional rights because both Hanania and Resnick are policymaking employees and therefore they can be terminated for their speech. Generally, after determining that an employee's speech is a matter of public concern, a court must employ the balancing test from Pickering v. Board of Education, 391 U.S.

563 (1968), to determine whether the employee's free speech interests outweigh the employer's efficiency interests. Defendants contend that the <u>Pickering</u> test is unnecessary when dealing with policymaking employees. They cite a Sixth Circuit case which holds that "where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." <u>Rose v. Stephens</u>, 291 F.3d 917, 922 (2002). The Seventh Circuit, likewise, sees no need to resort to the <u>Pickering</u> test, where a policymaking employee is terminated for speech related to his political or policy views. *See* <u>Bonds v. Milwaukee County</u>, 207 F.3d 969, 977 (7th Cir. 2000).

Plaintiffs maintain that the record is too sparse to support a finding that Resnick and Hanania are policymaking employees and, thus, this exception does not apply. However, the record is clear that neither the policymaking employee exception nor the <u>Pickering</u> test applies to Resnick. Defendants argue that Resnick, as town collector and a town trustee, was clearly a policymaker and therefore the exception applies. Resnick was in a policymaking position, but the defendants fail to acknowledge that this was an elected position from which she could not be fired for her speech or otherwise. Defendants quote <u>Regan v. Boogertman</u>, in support of their argument that Resnick's power to "act as an elected official is strong evidence that she holds a 'policymaking' position . . . ." 984 F.2d 577 (2nd Cir. 1993). But Resnick did not hold a position that allowed her to *act* as an elected official, she held the position *of an elected official*. When determining whether the policymaking employee exception applies, this is a significant distinction. While <u>Boogertman</u> holds that employees who exercise the power of elected officials can be terminated for their speech, it does not hold that elected officials can be terminated for their speech. The purpose of the policymaking employee exception is "to ensure that the first amendment's protection not interfere with the workings of democratic governments and the

ability of duly elected officials to implement their policies." <u>Shakman v. Democratic Organization of Cook County</u>, 722 F.2d 1307, 1310 (7th Cir. 1983)(*per curiam*), *cert.* denied, 464 U.S. 916 (1983).

The fact that Resnick was appointed to her position, not elected, does not change the analysis. The Cicero Town Charter does not provide an exception allowing the termination of individuals appointed to elected office, nor does it create any other distinctions between those appointed and those voted in to an elected office. Courts assessing whether the policymaking employee exception applies in a certain case look to the nature of the individual's position. *See* <u>Americanos v. Carter</u>, 74 F.3d 138, 141 (7th Cir. 1996). The nature of Resnick's position did not change as a result of her appointment – her position is an elected office. The policymaking employee exception was created to aid officials in positions such as hers, when dealing with high-ranking non-elected subordinates. It was not formulated to justify the termination of individuals in elected office for their speech. As for Hanania, even if he is a policymaking employee,[1] he does not wholly lose his freedom of speech, regardless of its content. <u>Marshall v. Porter County Plan Commission</u>, 32 F.3d 1215, 1221 (7th Cir. 1994)("We noted that it was 'too big a leap' for the district court to infer that 'once a public employee is put into the confidential-assistant or policymaker slot, he loses his right of free speech.'") Employer action is only exempt from <u>Pickering</u> balancing when a policymaking employee's speech is based primarily on political motivations. <u>Bonds</u>, 207 F.3d at 978-79 ("The policymaking employee exception does not immunize public employer action unconnected to and unmotivated by need

---

[1] The Seventh Circuit has interpreted the definition of a policymaking employee to include positions in which "'the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" <u>Bonds v. Milwaukee County</u>, 207 F.3d 969, 977 (7th Cir. 2000) (*quoting* <u>Warzon v. Drew</u>, 60 F.3d 1234, 1239 (7th Cir. 1995)(citation omitted)).

for political loyalty."). The Seventh Circuit has made clear that speech criticizing an employer's abuse of office does not involve political or policy viewpoints and therefore is not exempt from Pickering balancing. Marshall, 32 F.3d at 1221; see Bonds, 207 F.3d at 979. Hanania's speech called on Loren-Maltese to explain her involvement with Specialty Risk and to answer allegations that she had invested in Cicero's insurance provider. Like the plaintiff in Marshall, Hanania addressed an employer's potential abuse of office. Thus, the Pickering test is required to determine whether his speech interests outweigh the government's efficiency interests.

In a footnote, defendants argue that even if the court analyzes plaintiffs' claim under the Pickering balancing test, the result is the same: plaintiffs fail to state a constitutional violation. Defendants have the burden of showing that Cicero's interest in efficiency outweighs Hanania's free speech rights. See Coady v. Steil, 187 F.3d 727, 732 (7th Cir. 1999)(citing Glass v.Dachel, 2 F.3d 733, 744 (7th Cir. 1993)). Factors the court considers in balancing the interests of the government employer and the employee are "(1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public." Jefferson v. Ambroz, 90 F.3d 1291, 1297 (7th Cir. 1996). It is not clear as a matter of law that these factors balance in favor of Cicero's interest in efficiency. As discussed above, defendants contend that the second factor, the nature of Hanania's employment relationship,

weighs heavily in defendants' favor. Certainly Hanania's position of relative influence weighs more in favor of defendants than if plaintiff were a lower-ranking employee concerned only with administrative tasks. However, this alone does not justify a ruling for defendants. As Judge Rovner points out in her concurrence in <u>Jefferson v. Ambroz</u>, "[T]he interest of the employee in speaking out to uncover government malfeasance has often been held to outweigh the interest of the employer in maintaining harmony in the workplace." 90 F.3d 1291, 1298-99 (7th Cir. 1996)(J. Rovner concurring).

Defendants do not rely only on Hanania's confidential position to support their arguments under <u>Pickering.</u> Rather, they also contend that the threat of future disruption to the work environment as a result of Hanania's speech justified his termination. An employer does not need to establish actual disruption before terminating an employee if the threat of future disruption is obvious. *See* <u>Waters v. Churchill</u>, 511 U.S. 661, 673 (1994). However, actual harmful effects that result from the employee's alleged insubordination, indicate the potential for future problems with interpersonal relationships in the work environment. <u>Conner v. Reinhard</u>, 847 F.2d 384, 390 (7th Cir. 1988)("Nevertheless, the defendants have not provided us with any evidence of actual harmful effects resulting from Conner's alleged insubordination. Thus, the potential for office disciplinary problems in this case is not sufficiently 'persuasive' for us to conclude that this factor outweighs Conner's interest in free speech."). Defendants evidence no such effects.

Defendants do not argue that any of the remaining factors support Cicero's interest in efficiency over Hanania's speech rights. The agreed facts do not support a finding that his speech interfered with his ability to perform his job responsibilities. *See* <u>Conner</u>, 847 F.2d at 391 (*citing* <u>Hostrop v. Board of Junior College Dist. No. 515</u>, 471 F.2d 488, 492-93 & nn. 12, 14

(7th Cir. 1972)(stating even if speech interferes with employee's duties, if it is *de minimus* or speculative, employer's interest does not outweigh employee's)). The time, place, manner, or context of Hanania's speech did not render it more disruptive. Hanania spoke only to Loren-Maltese. As discussed above, though Hanania was a public employee, his speech was not a required responsibility of his office and, therefore, it could be regarded as the speech of a concerned citizen. Thus, Hanania does not, as a matter of law, fail to state a constitutional claim under the <u>Pickering</u> test.

Though plaintiffs have supported their claim of a constitutional violation, Loren-Maltese and the Trustees may still be entitled to qualified immunity if the constitutional standards were not clearly established at the time of their alleged violation. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent." <u>Conner</u>, 847 F.2d at 388 (*citing* <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). Defendants argue that the unlawfulness of terminating policymaking public employees for their speech was not apparent in 1996 and 1997, when Hanania and Resnick were terminated. Once again, this argument does not apply to Resnick because she was not an employee who could be terminated for her speech. Contrary to defendants' assertions, in 1994 the Seventh Circuit made clear that policymaking public employees do not relinquish their free speech rights upon acceptance of employment. <u>Marshall</u>, 32 F.3d at 1221 (7th Cir. 1994). In <u>Marshall</u>, the plaintiff, an executive secretary of a county plan commission, questioned the county commissioner's claims for mileage reimbursements and performance of partisan political activities on county time. *Id.* at 1218. Soon after, the plan commission fired the plaintiff, prompting her to file a § 1983 claim. *Id.* Following a jury verdict for the plaintiff, defendants moved for a new trial

or judgment as a matter of law, arguing that because plaintiff was a policymaking employee she may be terminated for her political beliefs. *Id.* at 1219. The Seventh Circuit rejected the defendants' argument, stating "whether one is a policymaker is not the determinative question" because policymaking employees do not surrender their right to freedom of speech, regardless of its content. *Id.* at 1221. The court found that plaintiff's speech regarding the county commissioner's potential abuse of office did not implicate the plaintiff's politics. *Id.* Whether or not an employer could dismiss a policymaking employee for their speech depended on its content. *Id.* Hanania's speech regarding Loren-Maltese's potential abuse of public office parallels the plaintiff's speech in <u>Marshall</u>. Thus, it was apparent at the time of Hanania's termination that government employers could not fire employees for their speech just because they were in policymaking positions. Plaintiffs state a § 1983 claim for which Loren-Maltese and the Trustees are not entitled to qualified immunity.

Finally, defendants propose a number of arguments for why plaintiffs cannot establish liability against them for violation of § 1983. The only argument that has not already been discussed above is Cicero's claim that Hanania cannot hold the municipality liable for his termination. There are three ways through which a municipality can violate an individual's civil rights: (1) an express policy, (2) a widespread practice that constitutes a custom or usage, and (3) an action or decision of a person with final policymaking authority. <u>McTigue v. City of Chicago</u>, 60 F.3d 381, 382 (7th Cir. 1995). As the record provides no evidence of an express policy or widespread practice that caused Hanania's alleged deprivation of rights, his claim against Cicero is based upon Loren-Maltese's action as a person with final policymaking authority. Defendants maintain that Loren-Maltese did not have final authority to terminate Hanania – the Board of Trustees did – and Hanania failed to seek the Board's review of the

decision.

The discretion to make hiring and firing decisions does not amount to policymaking authority, there must be a delegation of authority to set policy for hiring and firing. <u>Kujawski v. Board of Commissioners of Bartholomew County, Ind.</u>, 183 F.3d 734, 739 (7th Cir. 1999). In their own statement of material facts, defendants point out that all decisions by the Cicero town president are subject to review by the Board, except for items set out in §§ 2-131 through 2-141 of the Cicero Town Code. Section 2-135, on employment contracts, states, "Whenever the president determines that it is reasonable and in the best interest of the town to contract for managers, administrators, planners, attorneys, consultants, auditors, data processors, programmers, health officials, architects or engineers, the president is authorized to negotiate and execute contracts for such services without further approval." Cicero Town Code § 2-135. This is a clear delegation to the town president to set policy regarding hiring and firing. Loren-Maltese had final policymaking authority, therefore, Cicero can be held liable for Hanania's termination.

## Count II- § 1983 Conspiracy

Defendants present five arguments for summary judgment on Resnick's and Hanania's claim of conspiracy to violate their constitutional rights. Two of defendants' arguments, that they did not violate plaintiffs' constitutional rights, and that they are entitled to immunity, have already been addressed. Their remaining arguments are that plaintiffs fail to meet their burden to establish a conspiracy and that their claims are barred under the intra-corporate conspiracy doctrine.

To state a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and

(2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988), cert. denied, 486 U.S. 1043 (1988). Hanania fails to support a claim for conspiracy. He contends that Loren-Maltese violated his First Amendment rights by terminating him immediately after he questioned her regarding possible corruption. Hanania does not allege that Loren-Maltese had an agreement with anyone else before making her decision to terminate him, and thus he has no claim of conspiracy.

Resnick, on the other hand, does provide circumstantial evidence that Loren-Maltese, the Trustees, the Cicero Town News, the Cicero Town Republican Organization and the Cicero Observer, conspired to deprive her of her First Amendment rights. The courts have recognized that plaintiffs are rarely able to present direct evidence of a conspiratorial agreement and often must rely on circumstantial proof. See Bell v. Milwaukee, 746 F.2d 1205, 1255 (7th Cir. 1984); Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979); Krilich v. Village of South Holland, 1994 WL 457227, *2-*3 (N.D.Ill. 1994). Viewing the record in a light most favorable to Resnick, there is evidence from which a jury could find that the defendants conspired against her: (1) the Trustees voted to declare Resnick's position vacant for failure to attend Board meetings despite a request, delivered by Cicero's attorney, that she not attend the meetings, (2) the publication of a Cicero press release and articles in the Cicero Town News and the Cicero Observer stating that a federal case against the Town of Cicero would have been dismissed if not for Resnick's comments to a family intending to sell to a Hispanic family, and (3) Loren-Maltese's alleged control over the decisions made by the Cicero government.

Defendants also argue that regardless of the claim's merit, it is barred under the intra-corporate conspiracy doctrine, which holds that "a conspiracy cannot exist solely between

members of the same entity." <u>Payton v. Rush-Presbyterian-St. Luke's Medical Center</u>, 184 F.3d 623, 632 (7th Cir. 1999); <i>see</i> <u>Wright v. Illinois Dept. of Children & Family Services</u>, 40 F.3d 1492, 1508-09 (7th Cir. 1994). Loren-Maltese, the Trustees, and the Cicero Town News are all members of the same entity: the Town of Cicero. However, the Cicero Town Republican Organization and the Cicero Town Observer are not. The Observer is funded by the town's Republican organization, which is a separate political entity from the Town of Cicero. Despite the organization's independence from the Town of Cicero, Hanania states in his deposition that Loren-Maltese was primarily responsible for the content of the Observer and often dictated stories to the manager of the Observer. Given Resnick's allegations of involvement in the conspiracy by the Republican organization, and the Observer, the intra-corporate conspiracy doctrine is not available.

<u>Immunity from State Law Claims</u>

After our decision on defendants' motion to dismiss, plaintiffs' remaining state law claims are civil conspiracy against all defendants, intentional infliction of emotional distress against Cicero and Loren-Maltese, and defamation against Loren-Maltese, the Cicero Town News, the Cicero Town Republican Organization, and the Cicero Observer. Defendants maintain that the Illinois Tort Immunity Act shields Cicero from liability for all of the remaining state law claims. Given the ruling above on collateral estoppel and <i>res judicata</i>, these claims can only survive if rooted in post-settlement activities. Nonetheless, we will also analyze whether state law immunity applies to their pre-settlement actions. Section 2-103 of the Act provides, "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103. Relying on § 2-103, defendants argue that Cicero is immune from liability for claims arising out of the Board's

passage of the ordinances altering the responsibilities of the town collector's office, removing Resnick from office, and replacing her with the town collector-elect. Defendants further argue that Cicero cannot be held liable on these claims if its employees are not held liable. Thus, if § 2-201 provides immunity for Loren-Maltese and the Trustees, then it also provides immunity for Cicero.

Plaintiffs respond to these arguments by noting that defendants do not call for immunity from liability for the article in the Town News, the press release, or the mailer, all of which allegedly defamed Resnick. Though this is true, it does not challenge Cicero's claim of immunity for the remaining state law counts. As explained in the court's opinion on defendants' motion to dismiss, Cicero is not liable for its employees' libels and slanders, and therefore is immune from damages arising out of these publications. *See* Hanania, 56 F.Supp.2d at 1018; 75 ILCS 10/2-107. The remaining state law claims against Cicero: civil conspiracy and intentional infliction of emotional distress, arise from the ordinances passed by the Board, including the ordinance removing Resnick and the firing of Hanania by Loren-Maltese. In a footnote, plaintiffs argue that defendants' reliance on 745 ILCS 10/2-103 is misguided because there is no evidence that Resnick's firing was an "enactment." Plaintiffs appear to concede that the ordinances altering the duties of the town collector's office are enactments covered by the statute. Given their content and the manner in which they were passed, the ordinances certainly are enactments, as is the ordinance removing Resnick.

Though we found that defendants did not have absolute legislative immunity from liability for the federal claims related to Resnick's termination, we find that Cicero is immune from liability for state claims related to her termination. This determination may appear contradictory upon first glance, but it is not. When determining whether defendants enjoyed

absolute legislative immunity we asked whether Resnick's termination was a legislative or administrative act. While it was passed as legislation, the decision at the heart of the ordinance was administrative under federal case law – it was an employment decision to terminate an individual whom the Board normally would not have had the authority to fire. However, in applying 745 ILCS 10/2-103, we are not required to distinguish between legislative and administrative acts, we need only determine whether plaintiff's alleged injury stems from an "enactment." Resnick's termination is the result of an enactment. After passing a resolution finding that the position of town collector was vacant due to Resnick's absences at Board meetings, the Trustees were required by the town's charter to fill the office by appointment. Cicero Town Charter § 3. They filled the position by passing an ordinance instating the town collector-elect.

Even if Resnick's termination is not an enactment that ensures the city immunity under § 2-103, Cicero still cannot be held liable for state law claims arising out of Resnick's termination because Loren-Maltese and the Trustees cannot be held liable. As we noted in Zinnermon v. City of Chicago Department of Police, 209 F.Supp.2d 908, 910-11 (N.D.Ill. 2002), under 745 ILCS 10/2-109, "[A] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Section 2-201 of the Illinois Immunity Act provides Loren-Maltese and the Trustees immunity for liability arising from Resnick's termination, as well as Hanania's termination, and the other Board ordinances at issue. Section 2-201 of the Act states, "[A] public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. To warrant immunity, the public employee's conduct

must be both an exercise of discretion and a policy determination. *See* Harinek v. 161 North Clark Street Ltd., 181 Ill.2d 335, 343, 692 N.E.2d 1177, 1182 (Ill. 1998); Zinnermon, 209 F.Supp.2d at 911. Discretionary acts are unique to a public office, and unlike ministerial acts that are performed whenever a certain set of circumstances arise, discretionary acts require an exercise of judgment. *See* Zinnermon, 209 F.Supp.2d at 911; Ellis v. City of Chicago, 272 F.Supp.2d 729, 735 (2003). An act is a policy determination if it requires the balancing of competing interests to arrive at the best solution. *See* Harinek, N.E.2d at 1181. The ordinances that altered the nature and responsibilities of the town collector's office required such a weighing of interests and exercise of judgment.

The ordinances reducing the powers of the town collector's office are not the only acts by Loren-Maltese and the Trustees which qualify for immunity under state law. These defendants are immune from liability for the termination of both Resnick and Hanania, as well. Since "decisions of hiring and firing are discretionary acts," and require the balancing of interests, they warrant immunity under § 2-201. Ellis, 272 F.Supp.2d at 735-36; Zinnermon, 209 F.Supp.2d at 911. Loren-Maltese and the Trustees had to weigh competing interests and exercise discretion in determining that Resnick had abandoned her position and had to be replaced. Likewise, Loren-Maltese made a discretionary policy determination by firing Hanania. The court's ruling that defendants enjoy immunity from state law claims for these decisions is not affected by plaintiffs' contention that these terminations were in bad faith and that defendants' justifications for the terminations – Resnick's absences at Board meetings and Hanania's poor job performance – were pretexts. Though the court had recognized an exception to immunity under § 2-201 for corrupt or malicious motives in Hanania v. Loren-Maltese, 56 F.Supp.2d at 1014, the Illinois Supreme Court has made it clear that no such

exception exists. *See* Village of Bloomingdale v. CDG Inc., 196 Ill.2d 484, 494, 752 N.E.2d 1090, 1098 (Ill. 2001)("Therefore, because the plain language of these provisions does not contain an exception for 'corrupt or malicious motives,' we will not insert one."). Thus, all defendants have immunity from liability for state law claims arising from the Board's ordinances and the plaintiffs' terminations.

## Count III- State Law Conspiracy

With defendants' immunity in mind, we must determine whether the facts, when weighed in favor of the plaintiffs, support their three remaining state claims. Under Illinois law, "[c]ivil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 62, 645 N.E.2d 888, 894 (1994)(*citing* Smith v. Eli Lilly & Co., 137 Ill.2d 222, 560 N.E.2d 324 (1990)). As in the case of his federal conspiracy claim, Hanania fails to support a state law conspiracy claim because his alleged harm stems from his termination by Loren-Maltese alone, for which she is immune under state law. Thus, we do not reach defendants' argument that Hanania's claim is barred by the Illinois Local Government and Governmental Employees Tort Immunity Act.

As for Resnick's claim, defendants once again argue that this claim fails because there can be no conspiracy between an agent and its principals. *See* EEOC v. Outsourcing Solutions Inc., 2002 WL 31409584 at *17 (N.D.Ill. 2002)("Illinois courts recognize the intracorporate conspiracy doctrine."). They contend that plaintiffs do not allege conspiracy against the Town Republican Organization or the Observer. The complaint does however state this claim against these defendants, and in their response plaintiffs argue that the Republican organization conspired with Loren-Maltese and the other defendants by publishing lies about Resnick. Just

as the intracorporate conspiracy doctrine failed to apply to the § 1983 conspiracy claim, so too does it fail to apply to the state law conspiracy claim.

Finally, defendants highlight that conspiracy is not actionable unless the underlying acts of the defendants were wrongful or tortious. *See* <u>Galinski v. Kessler</u>, 134 Ill.App.3d 602, 606, 480 N.E. 2d 1176, 1179 (1ˢᵗ Dist. 1985). Given plaintiffs' triable claims regarding defendants' underlying actions, this conspiracy claim is actionable.

## Count V- Intentional Infliction of Emotional Distress

To succeed on a claim for intentional infliction of emotional distress, plaintiffs must show that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress." <u>Rekosh v. Parks</u>, 316 Ill.App.3d 58, 64, 735 N.E.2d 765, 772 (2d Dist. 2000)(*citing* <u>Doe v.Calumet City</u>, 161 Ill.2d 374, 392, 641 N.E.2d 498 (Ill. 1994)). While both Resnick and Hanania bring this count in their complaint, Hanania appears to recognize that he does not have a claim for intentional infliction of emotional distress. In plaintiffs' response brief to defendants' motion for summary judgment, their discussion of the emotional distress claim only addresses Resnick's claim; it never mentions Hanania. Indeed, given that Loren-Maltese is immune from liability for state law claims arising from her termination of Hanania, he has no basis for an emotional distress claim against her.

As for Resnick's claim, defendants argue that she has failed to show that Loren-Maltese's conduct was "extreme and outrageous." They believe that, as a matter of law, the actions described by Resnick in her depositions do not satisfy the Illinois standard for intentional infliction of emotional distress. While defendants cite a number of cases in which

employers engaged in outrageous behavior arguably more extreme than that described by Resnick, these cases do not prove that no reasonable jury could find Loren-Maltese's alleged actions "outrageous" as well.

Given Loren-Maltese's state law immunity for the ordinances altering the town collector's office and Resnick's termination, this claim rests solely on Resnick's allegations regarding the dissemination of statements that she was a bigot who cost the taxpayers of Cicero over $300,000 in legal fees. Resnick states that Loren-Maltese orchestrated this attack against her character in retaliation for questioning her involvement in the Specialty Risk scandal. These allegations do not fall short, as a matter of law, of outrageous behavior. As a result of these statements, Resnick maintains that she endured damage to her reputation and experienced extreme mental anguish, humiliation and embarrassment, as well as physical symptoms.

## Count VIII- Defamation

Defendants also bring defamation claims against Loren-Maltese, the Cicero Town News, the Cicero Town Republican Organization and the Cicero Observer. In our earlier decision on defendants' motion to dismiss, we found that Cicero was immune from liability for its employees' defamation. The Cicero Town News, a publication, controlled and operated by the Town of Cicero, is likewise immune. Just as a defendant is eliminated from this count, so too is a plaintiff. Following our dismissal of paragraphs 151, 152, and 153 of plaintiffs' complaint, Hanania declined to amend the complaint to include allegations that defendants' defamed him. Thus, only Resnick's claim remains.

Loren-Maltese argues that she has absolute immunity from the defamation claim because the statements at issue were made in accordance with her duties and responsibilities

as town president. Executive officials are protected from defamation suits "by an absolute privilege when issuing statements which are legitimately related to matters committed to [their] responsibility." Blair v. Walker, 64 Ill.2d 1, 9, 349 N.E.2d 385, 389 (1976). An official's unworthy purpose or corrupt motive does not invalidate her immunity, as long as she was acting within the scope of her duties. Barr v. Matteo, 360 U.S. 564, 575 (1959). In Blair, the Illinois Supreme Court found that the state governor was acting within the scope of this privilege when he issued press releases that informed the public of a state department's action against the plaintiffs. Id.

Resnick complains of statements published in a press release on December 9, 1997, articles in the Cicero Town News and the Cicero Observer, and a mailer sent to all Cicero residents on July 2, 1998 -- all of which Resnick attributes to Loren-Maltese. To determine whether Loren-Maltese is immune from Resnick's defamation claim, we must determine whether the publication of these statements was within the scope of her responsibilities. As to the press release, Loren-Maltese renders this finding fairly easy. She stated at her February 8, 2001 deposition, "I don't put out press releases, that is not my job." When asked further about this, she reiterated, "I do not write press releases." Of course, we do not expect that Loren-Maltese's duties included composing all of Cicero's press releases; however, her statement, "I don't put out press releases," appears to be a general disavowal of involvement with the December 9, 2001 press release.

In her motion for summary judgment, Loren-Maltese argues that the decision to inform her constituents of the case against Cicero was within her authority. She highlights discussions that she had with other town officials before the decision was made to send mailers to the town's residents. These discussions were months after the press release had already been issued

informing them of the outcome of the federal case. In her February 1, 2001 deposition, Loren-Maltese did not even claim to have made the decision to send the mailer. When asked "[w]ho made the decision to send out the mailer," she replied, "I don't know who made the formal, motion but I believe it was agreed upon by the majority in [the committee meeting]." Loren-Maltese also stated that she did not have any role in the preparation of the mailer. Given her assessment of her role regarding the press release and mailer, we cannot find as a matter of law that these publications were within the scope of her duties and responsibilities. She does not claim responsibility for deciding to issue them, nor does she accept a role in their preparation.

To prove defamation *per se,* or defamation *per quod,* a plaintiff must show that defendants "made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant and that plaintiff was damaged." Wynne v. Loyola Univ. of Chicago, 318 Ill.App.3d 443, 451, 741 N.E.2d 669, 675 (2000)(*citing* Cianci v. Pettibone Corp., 298 Ill.App.3d 419, 424, 698 N.E.2d 674 (1998). Under Fed.R.Civ.P. 9(g), state law defamation *per quod* claims brought in federal court must satisfy a heightened pleading standard for special damages. Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 924 (7th Cir. 2003). Thus, the plaintiff must plead and prove actual damage to her reputation and pecuniary loss resulting from the defamation. Dornhecker v. Ameritech Corp., 99 F.Supp.2d 918, 933 (N.D.Ill. 2000). While defamation *per se* does not require the plaintiff to plead special damages, the only categories of statements that are considered defamatory *per se* are commission of a crime, infection with a venereal disease, inability to perform or a want of integrity in the performance of duties of public office, and statements that prejudice a party or impute a lack of ability in a person's trade, profession or business. Wynne, 318 Ill.App.3d at 451(*citing* Bryson v. News America Publication, Inc., 174 Ill.2d 77, 88, 672 N.E.2d 1207

(1996)).

Defendants do not argue that Resnick's claim for defamation *per se* fails as a matter of law. Rather, they argue that she fails to state a claim for defamation *per quod*. After the court struck the complaint's reference to special damages, Resnick declined to amend the complaint and specifically state her damages. Since she has not evidenced special damages, Resnick fails to meet the requirements for defamation *per quod*. As for Resnick's defamation *per se* claim, her affidavit and deposition testimony support her allegations that Loren-Maltese, the town's Republican organization and its paper, the Observer, published false statements accusing her of a want of integrity, or imputing a lack of ability to function as a public official, which caused her damages.

Defendants also maintain that Loren-Maltese is entitled to summary judgment on Resnick's defamation claim based on an advice-of-counsel defense. Plaintiffs not only contest defendants' argument, they move for partial summary judgment on defendants' affirmative defense. To establish an advice-of-counsel defense, a defendant must show that "(1) before taking action, (2) he in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his possible future conduct, (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report." U.S. v. Cheeks, 3 F.3d 1057, 1061 (7th Cir. 1993); Liss v. U.S., 915 F.2d 287, 291 (7th Cir. 1990).

Loren-Maltese asserts that her deposition testimony, as well as that of Cicero employee Dave Donahue and attorney Mark Sterk, establishes this defense or at least creates a question of fact regarding its availability. In her motion for summary judgment, Loren-Maltese

contends that before the press release of December 9, 1997, was issued, Donahue observed the customary practice of consulting with an attorney regarding any legal issues raised by its release. Loren-Maltese cites her February 8, 2001 deposition, in which she states that she instructed Donahue to speak with Sterk about the mailer, not the press release. Thus, her testimony could only support a defense for the mailer, not for all the statements at issue. In addition, Loren-Maltese can only assume that Donahue had a discussion with Sterk. She has no specific knowledge of any conversations between the two.

For his part, Donahue remembers having a general conversation with Sterk about the federal housing lawsuit against Cicero sometime in late 1997, though he does not remember who initiated it. He states, "I believe I read the — Judge Zagel's opinion, and we [Sterk and Donahue] just discussed the case, the generals, so that I would understand the generals and specifics of it at the time so I could publicize the results." Donahue remembers discussing Resnick with Sterk, as well, but does not remember any of the specifics. Sterk does not recall discussing the case with Donahue at all. Nor does Donahue remember discussing the matter with Loren-Maltese.

Loren-Maltese's assumption that Donahue followed general practices and Donahue's discussion with Sterk of "the generals" of the Cicero lawsuit do not support a finding that Loren-Maltese sought the advice of an attorney and made a full and accurate report of the facts before getting advice on what to publish in the Cicero press release and mailer. Defendants argue that the record reflects Sterk's familiarity with the details of Judge Zagel's ruling. Sterk may have known the details of Judge Zagel's ruling due to his work with Cicero, but this does not support a defense that requires the defendant to *seek* the advice of an attorney and *make* a full report to him. Defendants also contend that Sterk's inability to recall discussing the case

with Donahue does not bar the defense. Even though this defense does not hinge on Sterk's recollection, it does require evidence that Loren-Maltese, personally or through Donahue, fully informed Sterk of the case, the intended press release and mailer; sought his advice; and followed it. The deposition testimony of Loren-Maltese, Donahue and Sterk does not provide such evidence.

In an earlier ruling the court rejected plaintiffs' argument that Judge Nolan's decision to allow defendants to pursue an advice-of-counsel defense was based on a material misrepresentation, see Hanania v. Town of Cicero, 2002 WL 226847 at *1 (N.D.Ill. 2002). However, we left unanswered the question of whether the evidence supported such a defense. Plaintiffs contend that it does not, and we agree. Since we grant plaintiffs' motion for partial summary judgment on the basis that defendants' advice-of-counsel defense lacks support in the record, we will not address plaintiffs' argument that defendants' refusal to waive attorney-client privilege prohibits their right to bring an advice-of-counsel defense.

Compensatory and Punitive Damages

Finally, defendants argue that plaintiffs failed to produce sufficient evidence regarding their claims to compensatory and punitive damages. Defendants contend that plaintiffs' self-serving statements are insufficient to support a claim for emotional distress, that they fail to provide concrete evidence of injury to their reputation, and that plaintiffs have provided no basis for an award of punitive damages.

Defendants cite Nekolny v. Painter, 653 F.2d 1164, 1172-73 (7th Cir. 1981), cert. denied 455 U.S. 1021 (1982), for the proposition that plaintiffs' generalized statements do not justify awards for non-economic damages in discharge actions. However, the Seventh Circuit has made clear that this case does not stand for the proposition "that an injured person's testimony

can never be sufficient by itself, or in conjunction with the circumstances of the particular case, to establish damages for emotional distress." U.S. v. Balistrieri, 981 F.2d 916, 932 (7th Cir. 1992)(*citing* Rakovich v.Wade, 819 F.2d 1393, 1399 n.6 (7th Cir. 1987)[*reversed on other grounds*]; Crawford v. Garnier, 719 F.2d 1317, 1324 (7th Cir. 1983). In Stafford v. Puro, 63 F.3d 1436, 1445 (7th Cir. 1995), the Seventh Circuit upheld plaintiff's award of emotional distress damages because he not only stated that defendants' actions humiliated him and caused him stress, but also testified as to the effects of this humiliation and stress. Resnick has likewise stated in her affidavit and deposition that she has suffered stress and humiliation due to defendants' actions, and that this has resulted in physical symptoms and an inability to engage in some normal social interactions.

As discussed above, plaintiffs do not have a claim for defamation *per quod*. Only Resnick has a claim for defamation *per se*. Statements that qualify as defamation *per se* are so obviously harmful that damage to the plaintiff's reputation is presumed. Thus, Resnick's claim for defamation does not require a showing of concrete, actual injury to her reputation. Even if Resnick's claim did require such a showing, she has met her burden for purposes of this motion. Defendants argue that Resnick relies wholly on her own testimony, but as in Niebur v. Town of Cicero, 212 F. Supp.2d 790, 822 (N.D.Ill. 2002), "defendants cite to no authority supporting the proposition that a showing of reputational injury requires third-party or expert support or cannot be sustained by merely the testimony of the plaintiffs alone."

Nor are defendants entitled to summary judgment on punitive damages. Their assertion that defendants' alleged conduct is not malicious, wanton or oppressive, rings hollow if one views the record in a light most favorable to the plaintiffs, as we must.

## CONCLUSION

Defendants' motion to strike is granted in part and denied in part. Paragraphs 14, 138, 163, 164 and portions of paragraph 13 of plaintiffs' statement of additional facts are stricken; the rest are not.

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted on all counts against all defendants, as they relate to defendants' activities prior to the August 20, 1997 settlement agreement between Resnick, Loren-Maltese, and Cicero. Summary judgment is granted on Hanania's § 1983 conspiracy claim (count II).

Summary judgment is granted on all state law claims against Cicero. It is also granted on Hanania's state law conspiracy claim (count III), his intentional infliction of emotional distress claim (count V), and his defamation claim (count VIII). Summary judgment is granted on Resnick's state law claims against Loren-Maltese and the Trustees that arise out of her termination, and on her claim for defamation *per quod*.

Finally, plaintiffs' motion for partial summary judgment on defendants' advice-of-counsel defense is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 16, 2004.